FILED
United States Court of Appeals
Tenth Circuit

October 31, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DIANNA JOHNSON,

    Plaintiff - Appellant,

v.

CITY OF MURRAY, a political
subdivision of the State of Utah; PETER
A. FONDACO, in his official and
individual capacity,

    Defendants - Appellees.

No. 12-4198
(D.C. No. 2:10-CV-01130-TS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Dianna Johnson appeals the district court's grant of summary judgment to the

City of Murray, Utah, and the City's Police Chief Peter A. Fondaco, on claims

related to the termination of her employment with the City. Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Johnson began working at the City's animal shelter as an animal control officer in 1998. The shelter operated under the direction of the City's police department, headed by Fondaco. In 2000, Cory Bowman was hired as the animal control supervisor, managing Johnson and two others that comprised the shelter's staff. Throughout his eight-year tenure as supervisor, the employees periodically complained to human resources about Bowman behaving boorishly, specifically alleging employee intimidation and animal cruelty. Although the City was generally responsive, the problems apparently did not abate.

After an incident in 2008 about which Johnson filed a complaint, Fondaco ordered an investigation into Bowman. The investigator learned of additional allegations of verbal abuse of employees and the mistreatment of animals. As a result of these allegations, Bowman was demoted and stripped of his supervisory duties.

But Johnson still had contact with Bowman every day, which caused her distress. In February 2009, the City granted Johnson FMLA leave because Bowman's presence was causing her panic attacks and she could not "keep coping with being around [him]." Aplt. App. at 235 (internal quotation marks omitted). While on leave, Johnson requested that she be given a different shift so she would not have contact with Bowman. The City granted this request by changing her shift to begin later in the day, at noon. Johnson also requested an order requiring no contact

between her and Bowman as an Americans with Disabilities Act ("ADA") accommodation, but Fondaco informed Johnson that he could not guarantee zero contact because animal control consisted of only four people. After returning, despite the new hours and infrequent contact, Johnson alleges that Bowman glared at her when they did have contact, and turned papers over on her desk while she was out of the office to intimidate her. She again requested and was granted FMLA leave.

Shortly after returning from leave, Johnson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sex and race discrimination. Johnson met with Fondaco a few weeks later and alleges that he informed her about a solicitation the City received from another county to take over animal control. She alleges that Fondaco then told her that if she kept "digging holes," he "will replace the department," apparently referring to her EEOC complaint. Aplt. Br. at 25 (internal quotation marks omitted).

Johnson again went on FMLA leave after obtaining a medical report stating she suffered from depression, post-traumatic stress disorder, severe anxiety, panic attacks causing insomnia, nightmares, and chest pain, among other problems. While on leave, she informed the City that she would only return to work if she were guaranteed no contact with Bowman. The City responded by offering her a night shift that did not coincide with Bowman's hours at all but she declined, instead asking that Bowman be moved to the night shift. The department did not ask Bowman to change shifts because it decided that such action would amount to a

punitive measure against him, which the department concluded was unwarranted in the absence of evidence that Bowman had continued acting improperly. Johnson begrudgingly accepted the night shift and returned to work. She then filed a second EEOC complaint alleging her move to the night shift was retaliation for seeking accommodation for a disability in violation of the ADA.

In February 2009, the *Salt Lake Tribune* published an article about Bowman's mistreatment of animals based on information Johnson provided to the reporter. The public expressed outrage and Fondaco's office fielded many complaints from concerned citizens. A week after the article's publication, Bowman resigned.

Shortly thereafter, the City began looking at outsourcing animal control to a third party. The City formed a review committee and hired an independent financial consultant to review whether the bids it received made economic sense. By all accounts, Fondaco was active in the formation of the review committee and the evaluation of bids. At the same time, through her attorney, Johnson demanded changes to her workload because the shelter was now down to only two employees. She claimed she was having problems with being overworked and stressed. The department ultimately granted her request by assigning police officers to do certain animal control activities and easing some of Johnson's duties.

Meanwhile, after collecting the information it sought, the review committee decided to recommend that the City outsource its animal control to a neighboring city. The City's mayor and Fondaco then submitted a memorandum to the City

recommending approval of the outsourcing decision in order to save the City money as well as renew the public's faith in animal control. The City Council held a hearing on the matter, at which Johnson and Fondaco both testified. The City Council ultimately voted to approve the agreement to outsource animal control. The City's animal control department was thus eliminated and Johnson's employment was terminated as a consequence.

Johnson brought suit in federal court against the Defendants alleging eleven different claims, four of which are relevant to this appeal: (1) a First Amendment violation brought under 42 U.S.C. § 1983; (2) an ADA discrimination and retaliation claim; (3) a Utah Whistleblower Act violation; and (4) breach of contract. Following discovery, the Defendants moved for summary judgment on all of Johnson's claims, which the district court granted.

In its order, the district court found that Johnson's First Amendment rights were not infringed because the City's interest in promoting efficient public services outweighed Johnson's First Amendment interests. The court also determined that, alternatively, the evidence showed that the City would have outsourced the department even in the absence of her disclosures to the press. With respect to the ADA claim, the court found that Johnson failed to demonstrate she was disabled under the meaning of the ADA because she was not substantially limited in performing a broad range of jobs. As to the Utah whistleblower claim, the court found that Johnson was unable to establish a causal relationship between her

communication to the newspaper about the city's alleged violations and the city's outsourcing decision.  Finally, the court concluded that Johnson's contract claim was barred because she signed a clear disclaimer that no contractual relationship existed between her and the City.  Johnson now appeals.

II.    DISCUSSION

We review the district court's grant of summary judgment de novo. *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). We view the record in the light most favorable to the nonmoving party. *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).

A. First Amendment

Johnson first alleges that the City retaliated against her by outsourcing its animal control after she exercised her First Amendment right to speak freely on matters of public concern when she spoke to the newspaper.  "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  But public employees' interest in commenting on matters of public concern must be balanced with the employer's interest "in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

- 6 -

To achieve this balance, a public employee's First Amendment claim is subject to a five factor test derived from the Supreme Court's decisions in *Garcetti* and *Pickering*. The *Garcetti/Pickering* test inquires as to whether (1) the speech was made pursuant to the employee's official duties; (2) the speech related to matters of public concern; (3) the government's interest in promoting efficiency outweighs the employee's interest in free speech; (4) the protected speech was a motivating factor in the adverse employment decision; and (5) the employer would have reached the same decision absent the protected speech. *See Morris*, 666 F.3d at 661.

Johnson argues that the district court erred in its third-factor decision that her speech caused substantial disruption to the City's internal operations and was therefore outweighed by the City's interest in the efficiency of its public services. Johnson contends that contrary to the district court's findings, Bowman's resignation did not cause a disruption. Aplt. Br. at 47. But not only is this contention unsupported by the record, it is directly undermined by her own allegations that after Bowman's departure, the shelter was severely understaffed—so much so that the City had to divert resources by using police officers to respond to animal control issues. And her statement that evidence showing the City devoted resources to respond to the public outcry "does not show that it disrupted the shelter's operations," *id*., ignores that it demonstrates a disruption to the *department's* operations.

And it is also clear on the record that the City would have reached the same decisions even absent the subject communications. In contrast to the evidence

provided by the City, Johnson has not provided any record evidence that her speech failed to cause substantial disruptions to the City's operations or otherwise lead to an adverse employment action.[1]

B. ADA

Johnson next claims that the City failed to accommodate her known disabilities in violation of the ADA. A plaintiff making an ADA discrimination claim must establish that (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of the job; and (3) she suffered an adverse employment action. *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (internal quotation marks omitted). To qualify as disabled, the plaintiff must show that a physical or mental impairment "substantially limit[s] major life activities." *Id*.

Johnson argues that the district court erred in finding that she was not limited in any major life activities. But she identifies no major life activity that was substantially impeded by her mental impairment beyond "thinking." Aplt. Br. at 51. Instead, she asserts that her impairment "cannot be realistically determined not to be disabling" simply by virtue of the impairment itself, a circular and conclusory rationale that is wholly unconnected to any record evidence. *Id*. Johnson has not

[1] Johnson did not argue a subordinate liability theory below or in her opening brief, *see Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), and therefore it is waived on appeal. *See FDIC v. Noel*, 177 F.3d 911, 915-16 (10th Cir. 1999) (applying waiver rule where defendant failed to raise issue both in the district court and in his opening brief on appeal).

provided evidence that she had a disability within the meaning of the ADA and is therefore unable to establish a prima facie case for ADA discrimination.

## C. Utah Whistleblower Protection

Johnson argues that the City unlawfully retaliated against her for communicating suspected violations related to the animal shelter's operations. The Utah Protection of Public Employees Act prohibits employers from taking adverse action against an employee who in good faith communicates a suspected violation of law, rule, or regulation. UTAH CODE ANN. § 67-21-3(1)(a)(ii) (West 2013).

Johnson contends that the district court erred when it found that she did not establish a causal relationship between her communication to the newspaper about suspected violations and the City's decision to outsource animal control. She argues the following evidence all support a causal connection: (1) the timing of the acceptance of bids to outsource animal control; (2) an email the mayor's chief of staff sent to the City Council shortly after the article's publication stating that Johnson was a "disgruntled employee" whose account to the newspaper was "strictly hers and is not accurate," Aplt. Br. at 27 (internal quotation marks omitted); and (3) the "lack of consistent and persuasive reasons" for outsourcing animal control, *id.* at 54.

Even assuming bias on the part of Fondaco and the mayor's office, the problem for Johnson is that the decision to outsource animal control was ultimately made by the City Council. And there is no evidence, or even an allegation, that members of the City Council were biased against Johnson. Although Fondaco may

- 9 -

have played a role in the recommendation for outsourcing, there is no evidence that the City Council was unduly influenced by him.  Nor is there sufficient evidence that the City Council was otherwise motivated to outsource animal control because of Johnson's communication.  While the decision may have been partially motivated by public relations concerns caused by the article, the evidence suggests it was as much an economic decision as anything else.  Thus Johnson has not adequately established that the decision to outsource animal control was made to retaliate against her for her communication to the newspaper.

D.  Breach of Contract

Lastly, Johnson asserts that the City was in breach of contract for allegedly allowing her to be abused by a co-worker, moving her to the night shift, failing to accommodate her disabilities, and outsourcing her job without providing her a job in a different department.  Although Johnson did not have an employment contract with the City, it is true that "circumstances may exist where the government voluntarily undertakes an additional duty beyond its normal obligation to the employee" creating an implied contract.  *Cabaness v. Thomas*, 232 P.3d 486, 502 (Utah 2010) (internal quotation marks omitted).  Such a contract may arise from policies in an employment manual, as Johnson alleges here.  *See id*.  But "a clear and conspicuous disclaimer" prevents manuals from being considered an implied contract.  *Id*. (internal quotation marks omitted).

Johnson argues that the district court improperly relied upon the disclaimer contained in her employment manual because the manual she received allegedly did not include the disclaimer.  Moreover, she contends that the City's job announcements contained only a limited disclaimer which stated that no contract existed between the City and its employees relative only to permanent employment, salaries, and benefits.  As Johnson identifies, the Utah Supreme Court has held that a limited disclaimer disclaims the employer of liability only with respect to the items listed in it.  *See id.*, 232 P.3d at 502-04.  However, this utterly ignores that Johnson *signed a broad disclaimer on her application* which stated that the application and any other City documents were not employment contracts.  The disclaimer also declared that any statements to the contrary in City documents should not be relied upon.  Her contention that the employment handbook created a series of contractual obligations is therefore meritless.

The judgment of the district court is affirmed.  The Defendants' motion to strike is denied as moot.  Volume III of the Appendix shall remain under seal.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge