FILED
United States Court of Appeals
Tenth Circuit

April 7, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GLENN MATTHEWS,

      Plaintiff - Appellant,

v.

PENNSYLVANIA LIFE INSURANCE,

      Defendant - Appellee.

No. 14-4100
(D.C. No. 2:12-CV-00896-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

Glenn Matthews appeals from a summary judgment entered in favor of

Pennsylvania Life Insurance (the insurer) on his claim for benefits under an Accident

Benefit Policy (the policy).[1]  Because there is no <u>genuine</u> dispute as to any material

fact and the insurer is entitled to judgment as a matter of law, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     Our jurisdiction derives from 28 U.S.C. § 1291.

## BACKGROUND

In 2002, when he was 50 years old, Matthews "was riding a horse and was bucked off. He landed on his hip and lower back and sustained a severe hip injury which has never fully healed." Aplee. App. at 2. Matthews was hospitalized the same day. Dr. Dunn, the physician who looked at the x-rays, said they "show abnormal widening of the pubic symphysis." Aplt. App. Vol. 1 at 98. He also noted "[b]oth SI joints seem to be somewhat wider than average as well. The appearance of the pelvis suggests that [Matthews] probably has developmental diastasis of the symphysis pubis and the AC joints may look abnormal as a result. There do appear to be some degenerative changes of the spine." *Id*. Dr. Dunn stated "I cannot entirely exclude the possibility that this might be exaggerated by an acute injury but I doubt that the appearance is acute." *Id*. He again acknowledged an "abnormal widening of the symphysis pubis with widening of both SI joints," but "suspect[ed] that these findings are primarily chronic and developmental." *Id*.

A few days later Matthews was seen by another physician, Dr. Brunsdale, who noted "the diastasis of the symphysis pubis does appear abnormal." *Id*. at 100. He commented that the abnormality "could be a chronic thing" or "an acute orthopedic injury." *Id*.

At the time of the accident Matthews was insured against an "Injury [that] causes Total Disability." *Id*. at 53. The policy defined "Injury" as "accidental bodily

injury sustained: (1) directly and independently of disease or bodily infirmity, or any other causes; and (2) while [the] [p]olicy is in force." *Id.* at 49.

As a result of the horseback riding accident, Matthews made a claim for disability benefits. The insurer paid benefits from the time of the accident through November 2003, when Matthew's physician, Dr. Callahan, released him to return to full-time work as a construction supervisor. In 2008, he was permanently laid off due to a lack of work. In early 2009, Matthews talked to a couple of companies about work as a construction supervisor, but there were no openings. He made no further effort to find work because he "just figured it would be the same story everywhere." *Id.* at 80. As Matthews's explained the situation, I "[p]retty much" resigned myself to retire. *Id.*

In March 2010, Matthews circled back to the insurer and filed a second claim for disability benefits. As grounds he cited a "[b]ad back." *Id.* at 344. In support of the new claim, Dr. Callahan described the disability as "continuing degenerative disease, continued pain." *Id.* at 345. The insurer initially approved benefits while it gathered Matthews's medical records and scheduled a functional capacity examination. At the beginning of the examination in August 2010, Matthews stated "the low back aching was constant and the pubic bone discomfort comes and goes." *Id.* at 333. Matthews, however, was unable to complete the examination due to his hypertension, which was out of control. He was advised to seek medical treatment for that problem and return at a future date. In the meantime, the insurer wrote to

Matthews in early December advising it would discontinue benefits in mid-February 2011. In particular, it referenced Dr. Callahan's notes from September 22, 2009 (Matthews's first back-related medical appointment since 2004) stating "your medical records reflect that you have 'multiple level degenerative disc disease and degenerative arthritis.'" *Id*. at 141. As such, the insurer determined the disability was not the result of an "Injury" as defined in the policy because it did not arise "directly and independently of disease or bodily infirmity, or any other causes." In other words, although Matthews *may* have suffered a pelvic injury (pelvic symphysis diastasis) in the horseback riding accident, his disabling back pain did not arise directly from that injury and was not independent of all other causes.

In July 2011, Matthews filed for Social Security disability insurance benefits in which he listed the following impairments: (1) pelvic injury; (2) bad back; (3) depression; (4) high blood pressure; (5) degenerative discs; and (6) arthritis. Ultimately the agency found two severe impairments: "degenerative disk disease in the lumbar area of the spine and pelvic symphysis diastasis." Aplt. App. Vol. 2 at 541. In February 2012, the agency concluded in light of Matthews's "age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [he] can perform," and accordingly he was disabled and entitled to benefits. *Id*. at 543.

In September 2012 Matthews filed suit seeking benefits under the policy. According to the complaint, the "hip injury [suffered in the horseback riding

- 4 -

accident] is the most predominating condition that affects [his] total disability and has had a major impact upon his ability to function." Aplee. App. at 2. He acknowledged the existence of "degenerative disc disease," but alleged the "disease, but for his hip injury, would not be relevant." *Id*.

When asked during discovery to describe the medical symptoms preventing him from working, Matthews said: "Split pelvis, degenerative disc[] disease." Aplt. App. Vol. 2 at 379. According to Dall, Matthews's own medical expert, pubic diastasis (pelvic symphysis diastasis) was the only accident-related injury suffered by Matthews and his degenerative disc disease, low back pain, and osteoarthritis of the hip were all non-accident related. Dall stated there was no "objective medical evidence [as to the] impact or synergistic effects . . . the accident-related diagnoses had on Matthews' non-accident related diagnoses." Aplt. App. Vol. 1 at 137.

The insurer's medical expert, Dr. Ballard, opined "[t]here are multiple causes for [Matthews's] work restrictions [including] [t]he accident-related pubic diastasis with secondary sacroiliac joint dysfunction, and also [t]he lumbar degenerative changes in his back which are not secondary to the accident in question." Aplee. App. at 28.

When asked to comment on Ballard's report, Dall submitted a frank rebuttal. In it he does "not have a lot to say inasmuch as Dr. Ballard's comments are fairly consistent with mine. We both agree that the pain leading to [Matthews's] functional limitations and restrictions is multifactorial." Aplt. App. Vol. 2 at 547.

At the conclusion of discovery the insurer moved for summary judgment because Matthews failed to prove his disability was the result of an accidental injury "directly and independently of disease or bodily infirmity, or any other causes."[2]  The district judge found "the undisputed evidence shows that the horse riding accident, at most, exacerbated or contributed to Matthews' low back pain and degenerative disc disease [and the court therefore] conclude[d] that the accident was not the sole and direct cause of his disabling condition."  *Id*. at 705.[3]

## ANALYSIS

"We review the district court's order granting summary judgment de novo." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013). Summary judgment is available if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the nonmoving party."  *Koessel*, 717 F.3d at 742 (internal quotation marks omitted).  In order to survive summary judgment, "[f]or dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings

---

[2]     Alternatively, the insurer moved for summary judgment claiming Matthews failed to prove he was receiving the regular and personal care of a physician for his disability as required by the policy.  The district judge did not address this issue. *See* Aplt. App. Vol. 2 at 705 n.4.

[3]     Judgment was also entered in favor of the insurer on Matthews's claim for bad faith breach of contract.  Matthews does not appeal from that decision.

and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to his case." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (alterations omitted) (internal quotations marks omitted).

Matthews had the burden to prove he was totally disabled due to an injury as defined by the policy. *See Winchester v. Prudential Life Ins. Co. of Am.*, 975 F.2d 1479, 1487-88 (10th Cir. 1992) ("In order to prevail on the merits [of his claim that he was entitled to accidental death benefits under a policy that required the injury to arise directly and independently of all other causes he] had to prove that the death occurred independently of any other cause, including a preexisting bodily infirmity.").

In interpreting nearly identical language in an accidental death policy, this court held "the words 'directly and independently of all other causes' . . . are not ambiguous." *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). Given this lack of ambiguity, we concluded this policy language "imposes two obvious conditions. First, the loss must result *directly* from accidental bodily injury. Second, the loss must result *independently* of all other causes. . . . Any other interpretation in this context is contrived." *Id.* at 1010-11.

Matthews tries to create the illusion of a genuine issue of material fact by engaging in a selective, hyper-technical parsing of the evidence. His efforts are not convincing. We have independently examined the evidence as part of our de novo review and agree with the trial judge's well-stated conclusion:

All of the physicians who either treated Matthews or reviewed his medical records could not determine a precise cause of his back pain and indicated that his preexisting back condition may have been exacerbated by his riding accident. Not one physician concluded that the riding accident was the sole and independent cause of Matthews' back pain.

Because the undisputed evidence shows that the horse riding accident, at most, exacerbated or contributed to Matthews' low back pain and degenerative disc disease, the court concludes that the accident was not the sole and direct cause of his disabling condition.

Aplt. App. Vol. 2 at 705.

Matthews continues to press particularly hard on one issue: whether his own declaration was sufficient to create a genuine issue of material fact as to whether the horseback riding injury was the direct and independent cause of his disabling back pain. Despite the fact that "[n]ot one physician concluded that the riding accident was the sole and independent cause of [Matthews's] back pain," *id*., Matthews offered his own contrary medical opinion:

The pelvis, pubis, lower spine, L4-S5, SI joints and hips are all generally in the same body quadrant and same plane. Pain originating in any of these areas could be described as lower back pain. . . . When speaking of low back pain, Matthews attests that he at all times has described all the pain in this area from his SI joints and pelvic diastasis as low back pain. In fact, on January 3, 2014, he purchased diagnostic injections into the nerves associated with his pelvic diastasis and SI Joint disruption. This temporarily relieved most of his pain. Because of this he can attest his pain is caused by his diastasis symphysis pubis and SI Joint disruption.

Aplt. Supp. App. at 716.

Matthews's continued reliance on the results achieved from the injections is disingenuous because it is based on a proposed addendum to Dall's expert report, in

- 8 -

which Dall "opined that because [Matthews] experienced good results from the injections, it strongly suggested that [his] pain was, in fact, coming from his sacroiliac joints, which supports [his] claim that his disability is caused solely by the horse-riding accident." Aplee. App. at 10. Upon a motion, the district judge struck the addendum, which contains improper rebuttal testimony; it presents new evidence that is being used to bolster [Matthews's] case-in-chief. *Id*. at 11. We reject Matthews's attempt to end run the court's order by adopting Dr. Dall's stricken medical opinion as his own.

More to the point, Matthews is not qualified to give a medical opinion. Matthews cites cases reciting the unremarkable proposition that a lay witness can testify as to the state of his or her own physical health. However, the opinion of a lay witness "is limited to one that is: [] rationally based on the witness's perception; [] helpful to clearly understanding the witness's testimony or to determining a fact in issue; and [] *not based on scientific, technical, or other specialized knowledge* within the scope of [the rule on expert testimony]." Fed. R. Evid. 701 (emphasis added). Matthews's "opinion" is based on scientific, technical, or other specialized knowledge and is not admissible on summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge