FILED
United States Court of Appeals
Tenth Circuit

November 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOUGLAS J. DINSE,

      Plaintiff - Appellant,

v.

CARLISLE FOODSERVICE
PRODUCTS INCORPORATED,

      Defendant - Appellee.

No. 12-6178
(D.C. No. 5:11-CV-00905-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH, GORSUCH,** and **HOLMES**, Circuit Judges.

---

Plaintiff-Appellant Douglas Dinse filed suit against his former employer

Defendant-Appellee Carlisle Foodservice Products, Inc. ("Carlisle"), alleging that

Carlisle failed to provide him a reasonable accommodation for his disability in

violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§§ 12101–12213. The district granted summary judgment to Carlisle because

there was no evidence that Mr. Dinse requested a reasonable accommodation from

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate Procedure
32.1 and Tenth Circuit Rule 32.1.

Carlisle, which is a prerequisite to Carlisle having a legal duty to provide one. Mr. Dinse appeals from the district court's decision, arguing that there are factual disputes regarding whether he adequately requested a reasonable accommodation that preclude a grant of summary judgment. For the reasons that follow, we **affirm** the district court's decision.

**I**

**A**

Mr. Dinse was hired by Carlisle as a project engineer in September 2008.[1] As a project engineer, Mr. Dinse was required to perform numerous tasks, including the timely drafting of Engineering Change Notices and the completion of weekly "spec assignments." Throughout his employment with Carlisle, Mr. Dinse's two supervisors were Greg Davis, his immediate supervisor, and Martin Benning, the Director of Engineering.

During this time, Mr. Dinse suffered from several maladies, including diabetes, a heart condition, spinal issues, and avascular necrosis, which is a degenerative hip condition. According to Mr. Dinse, Messrs. Davis and Benning were "aware" of his health issues as early as December 2008, and "it was visually obvious to . . . [them both] that [he] was in severe pain." Aplt. App. at 62 (Aff.

---

[1] Because we are reviewing the grant of summary judgment, we recite the facts in the light most favorable to the non-movant, Mr. Dinse. *See Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1271 (10th Cir. 2012).

of Douglas Dinse, dated May 1, 2012). Carlisle's awareness of these conditions, says Mr. Dinse, also stemmed from his regular need for sick leave to attend doctor appointments and physical therapy and because his avascular necrosis required him to walk with a cane.

Mr. Dinse's work performance was satisfactory through March 2009. Not long thereafter, however, Mr. Dinse's health issues began to affect his job performance, despite his efforts to stay current on his work by working late and on the weekends. According to Mr. Dinse, his disability, the pain it caused, and the various pain medications he was prescribed made it difficult to focus and made him extremely tired. He acknowledged that this mental fatigue prevented him from timely completing his work assignments.

In June 2009, Mr. Davis provided Mr. Dinse with a written notice that detailed Carlisle's concerns with Mr. Dinse's work performance, including the fact that he was eleven weeks behind on his spec assignments. The notice indicated that Mr. Dinse needed to, among other things, catch up on his assignments and that he could be terminated if his work did not significantly improve.

Mr. Davis met with Mr. Dinse in July 2009 to discuss his work performance. Mr. Dinse was informed that, although his performance had somewhat improved, his productivity still needed improvement because he was seventeen weeks behind on his spec assignments and had not made any progress

toward catching up.  Mr. Davis had a third and final meeting with Mr. Dinse, in August 2009, at which point Mr. Dinse was twenty weeks behind on his spec assignments.

A couple of days before Carlisle terminated Mr. Dinse's employment, he informed his supervisors that he was going to need to undergo surgery.[2]  Because Mr. Dinse would need to recover from this surgery at home, he discussed with Messrs. Davis and Benning the possibility of Carlisle providing him with a laptop during the post-surgery recovery period, so that he could begin working sooner than otherwise would be possible.  As events unfolded, however, the occasion never arose for Carlisle to provide a laptop to Mr. Dinse.  Specifically, on August 21, 2009, prior to the surgery, Carlisle terminated Mr. Dinse.

Following his termination, Mr. Dinse was awarded unemployment benefits by the Oklahoma Employment Securities Commission ("OESC") after it determined that he was not discharged for misconduct.  Mr. Dinse also filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and it determined that Carlisle had violated the ADA by not providing Mr. Dinse with a reasonable accommodation for his disability.

---

[2]     Although the parties dispute whether Carlisle made the decision to terminate Mr. Dinse before or after he notified Carlisle that he would need to undergo surgery, the sequence of these events has no bearing on our ultimate resolution of this appeal.

**B**

Mr. Dinse filed suit against Carlisle alleging that it discriminated against him in violation of the ADA by failing to provide him with a reasonable accommodation that would allow him to adequately perform the essential functions of his job. Carlisle moved for, and the district court granted, summary judgment on Mr. Dinse's reasonable-accommodation claim.

Certain aspects of Mr. Dinse's claim were undisputed. First, Carlisle did not contest that Mr. Dinse was "disabled" as defined by the ADA.[3] Second, Mr. Dinse did "not contest that he was unable to comply with his project deadlines absent an accommodation, or that doing so was an essential function of his job." Aplt. App. at 134 (Dist. Ct. Order, dated June 14, 2012).

The district court began by addressing the two accommodations Mr. Dinse suggested that Carlisle should have provided him: a laptop computer and a modified work schedule. According to Mr. Dinse, these accommodations should have been provided because Carlisle was clearly aware of his disability. But the district court, relying on *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th

---

[3] "A person is 'disabled' under the ADA if he has 'a physical or mental impairment that substantially limits one or more major life activities.'" *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (quoting 42 U.S.C. § 12102(1)(A)). Carlisle has not contested that Mr. Dinse's various health conditions meet this definition. Therefore, for the purposes of this appeal, we accept that Mr. Dinse was disabled as defined by the ADA and refer to his "disability" as encompassing all of his various health conditions.

5

Cir. 2011), concluded that mere awareness of Mr. Dinse's disability was insufficient to trigger Carlisle's duty to provide him a reasonable accommodation. Instead, Mr. Dinse was required to make an adequate request for these accommodations before Carlisle had a legal obligation to work with Mr. Dinse to provide them.

Evidence that Mr. Dinse discussed a laptop accommodation with Messrs. Davis and Benning was insufficient, reasoned the district court, because Mr. Dinse's deposition testimony clarified that "this conversation . . . was in the context of working from home *after* his proposed surgery so [he] could return to work sooner—not beforehand so that he could keep up." Aplt. App. at 136. Because Mr. Dinse failed to point to "any statements or conversations with . . . anyone . . . at Carlisle[] which could be construed as requesting *present* help for his disability," *id.* at 135, the district court reasoned that there was no evidence that he "requested an accommodation from Carlisle which would have enabled him to perform his essential job functions," *id.* at 136. Thus, concluded the district court, Mr. Dinse was not a "qualified individual" under the ADA, which entitled Carlisle to summary judgment.

This appeal followed.

## II

### A

"We review a district court's grant of summary judgment de novo, applying

6

the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the summary judgment evidence in the light most favorable to the non-movant, applying the same standard as the district court . . . ." *Gonzales*, 701 F.3d at 1271 (omission in original) (quoting *Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012)) (internal quotation marks omitted).

**B**

**1**

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Actionable discrimination under the ADA takes many forms, one of which is when an employer fails to provide a disabled employee a reasonable accommodation. *See id.* § 12112(b)(5)(A); *see also C.R. England*, 644 F.3d at 1048 ("The [ADA] . . . establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them." (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001)) (internal quotation marks omitted)); *Davidson v. AOL*, 337 F.3d 1179, 1188–89 (10th Cir. 2003) ("[A] separate claim of discrimination can be stated under the ADA for

7

failing to provide a reasonable accommodation.").

The ADA defines "reasonable accommodation" to "include"

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9); *accord* 29 C.F.R. § 1630.2(o).

Under the ADA, a prima facie case of disability discrimination requires a plaintiff to demonstrate that he (1) is disabled as defined by the ADA; "(2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012); *see C.R. England*, 644 F.3d at 1037–38.

The district court decided the case on the second element of the prima facie case. *See, e.g.*, Aplt. App. at 134 n.8 ("For simplicity, the court has focused its discussion on the threshold matter of whether plaintiff has presented evidence that he was qualified to perform the essential functions of his job, with or without a reasonable accommodation."); *id.* at 137 ("Plaintiff has not created a triable issue as to whether he was a 'qualified person' under the ADA. As a result, plaintiff

8

cannot prevail on his disability discrimination claim.").  We elect to do the same.

**2**

Regarding the second element, it is notable that "before an individual can be deemed *not* 'otherwise qualified' [that is, not qualified] the employer must make an effort to accommodate the employee's disability."  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1265 (10th Cir. 2010) (emphasis added); *see Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 744 (10th Cir. 2013) ("While we agree with the district court that [plaintiff] did not establish he could perform the essential functions of a patrol officer, we must still consider whether the [employer] made an effort to reasonably accommodate him.").  *See generally* 42 U.S.C. § 12112(b)(5)(A) (specifying as a form of employer disability discrimination "not making reasonable accommodations to the known physical or mental limitations of *an otherwise qualified* individual with a disability" (emphasis added)).  "To facilitate the reasonable accommodation, '[t]he federal regulations implementing the ADA envision an interactive process that requires participation by *both* parties.'"  *C.R. England*, 644 F.3d at 1049 (alteration in original) (emphasis added) (quoting *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004)); *cf.* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").

9

"[A]s a precondition to suit, employees have the burden to request accommodation unless the employer has 'foreclosed the interactive process through its policies or explicit actions . . . .'" *Koessel*, 717 F.3d at 744 (omission in original) (quoting *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999)). In fact, "before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *C.R. England*, 644 F.3d at 1049; *see Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc) ("In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations . . . ."). "Although the notice or request 'does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' it 'nonetheless must make clear that the employee wants assistance *for his or her disability*.'" *C.R. England*, 644 F.3d at 1049 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).

In this case, it is true that Carlisle never engaged Mr. Dinse in an interactive process nor provided him with a reasonable accommodation. But we conclude based on the undisputed evidence that Mr. Dinse never asked Carlisle for an accommodation. Like the district court, we believe that this conclusion seals Mr. Dinse's fate because Mr. Dinse does not dispute that he could not

10

perform at least one essential function of his job (i.e., meeting project deadlines) without an accommodation. In other words, in effect, Mr. Dinse acknowledged that, without an accommodation, he was not qualified to hold his job. And, by virtue of his silence, Carlisle was under no legal obligation to provide him with an accommodation.

Mr. Dinse's primary argument is that Carlisle's awareness of his disability was sufficient to place Carlisle on notice that he needed an accommodation, thereby triggering Carlisle's duty under the ADA to engage in the interactive process. This argument is unavailing. More is required to trigger an employer's duty to engage in the interactive process than mere awareness that the employee is disabled; specifically, the employee must make an adequate request for a reasonable accommodation for the disability. *Cf. id.* at 1032, 1049–50 (holding that the plaintiff did not make an adequate request for an accommodation even though his employer was aware of his disability).

Certainly, an employer may inquire whether an employee needs an accommodation before an employee has made an adequate request, but an employer is under no legal obligation to do so absent such an employee request. *See* 29 C.F.R. Pt. 1630, App. § 1630.9 (stating that "an employer *may* inquire whether the employee is in need of a reasonable accommodation," but that "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed" (emphasis added)). In other words, it is the request

11

*for an accommodation* for an employee's disability that triggers an employer's duty to engage in the interactive process, not an awareness of a disability that may (or may not) necessitate an accommodation. *See C.R. England*, 644 F.3d at 1049 ("The request for accommodation must be sufficiently direct and specific, giving notice that [the employee] *needs a special accommodation*." (emphasis added) (quoting *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004)) (internal quotation marks omitted)); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice *of the needed accommodation*." (emphasis added) (citations omitted) (internal quotation marks omitted)); *Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997) ("The 'employee's *initial request* for an accommodation . . . triggers the employer's obligation to participate in the interactive process.'" (omission in original) (emphasis added) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996))).

There is no doubt that Carlisle knew of Mr. Dinse's significant health issues, which Carlisle does not dispute constituted a disability: he walked with a cane, was visibly in pain at work, and frequently requested leave to see several physicians and to attend physical therapy. However, "[i]t is not the employer's responsibility to anticipate the employee's needs and affirmatively offer

12

accommodation if the employer is otherwise open to such requests," *Koessel*, 717 F.3d at 745; yet, this is precisely the burden Mr. Dinse asks us to impose on Carlisle. This we will not do.[4]

Mr. Dinse alternatively argues that the record supports the view that he made the kind of specific accommodation request mandated by the ADA, when he asked Carlisle for a laptop that would have allowed him to work from home while he recovered from his upcoming surgery.[5] The district court concluded that this

[4] The assignment of the initial burden in the reasonable-accommodation, interactive process to the employee makes eminent sense when one considers that poor work performance "ha[s] many causes." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995). It can be hard for an employer to know whether an employee's difficulties in performing his or her job are caused by a disability or some other factor, and "[t]he ADA does not require clairvoyance." *Id.* Thus, it is logical and not surprising that the law would place the duty to act on the party with the most information regarding the disability and the limitations it causes—namely, the employee. *See Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 735 n.4 (5th Cir. 1999) ("Employers cannot be expected to anticipate all the problems that a disability may create on the job and spontaneously accommodate them."); *Mole v. Buckhorn Rubber Prods.*, 165 F.3d 1212, 1218 (8th Cir. 1999) ("Only [the plaintiff] could accurately identify the need for accommodations specific to her job and workplace. [She] cannot 'expect the employer to read [her] mind and know [she] secretly wanted a particular accommodation and [then] sue the employer for not providing it.'" (third, fourth, and fifth alterations in original) (quoting *Ferry v. Roosevelt Bank*, 883 F. Supp. 435, 441 (E.D. Mo. 1995))).

[5] Mr. Dinse also contends that he made a second specific request when he "told [Carlisle's] benefits coordinator [in] December, 2008 that his medical condition was deteriorating and inquired about any program that would allow him accommodation in the form of leave because his sick leave was used up and he was using vacation leave." Aplt. Opening Br. at 19; *see id.* at 24 (making a similar assertion). The sum total of Mr. Dinse's argument on this score, however, is two assertions unadorned with citations to the record or legal authorities. This is insufficient to require our consideration of this argument, and thus we deem it waived. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (deeming several issues waived when the support for

(continued...)

request did not constitute a request for a reasonable accommodation for his disability, reasoning that Mr. Dinse's deposition testimony makes clear that his laptop request was "in the context of working from home *after* [a] proposed surgery so [he] could return to work sooner—not beforehand so that he could keep up." Aplt. App. at 136. Mr. Dinse does not dispute the district court's reading of his deposition testimony on appeal; he merely reasserts that he requested the reasonable accommodation of a laptop. The failure to challenge the district court's reasoning allows us to accept the court's conclusion as unchallenged on appeal. *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (declining to consider an argument that "d[id] not challenge the [district] court's reasoning" in rejecting that argument).

We need not, however, rest our decision on this failure to challenge alone,

---

[5](...continued)
each consisted of "mere conclusory allegations with no citations to the record or any legal authority for support"); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed."). The Federal Rules of Appellate Procedure make clear that the "argument" portion of the appellant's opening brief "must contain" the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). Mr. Dinse's failure to comply with this requirement effectively leaves us to forage through the record for his alleged request and—in the event that we should find it—would place us in the inappropriate role of advocate, that is, with the responsibility for constructing a legal argument for why this request was sufficient to trigger Carlisle's duty to engage in the interactive process. This is Mr. Dinse's responsibility, however, and one we will not bear for him. *See United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) ("[I]t is the appellant's responsibility to tie the salient facts, supported by specific record citation, to [his] legal contentions." (second alteration in original) (citation omitted) (internal quotation marks omitted)).

as the evidence confirms that the district court's analysis is correct. In his affidavit, Mr. Dinse stated that he "discussed" with Messrs. Davis and Benning "an accommodation—working from home using a laptop computer." Aplt. App. at 62. But Mr. Dinse's deposition testimony makes clear that his laptop request was not related to his disability and how it affected his day-to-day work performance:

> Q. [W]ho did you have a discussion with about getting a laptop computer for your use?
>
> A. With both [Messrs. Davis and Benning].
>
> . . . .
>
> Q. You had had a discussion with [Messrs. Davis and Benning] about working from home *after* you had to have your surgery; right?
>
> A. Yes.
>
> . . . .
>
> Q. And you say here that [the requested] laptop [n]ever came. Instead, you were terminated. And you were terminated *before* you had your surgery; right?
>
> A. Yes.
>
> Q. So there wouldn't have been a reason for you to have a laptop at home before your termination; correct?
>
> A. That's correct.

*Id.* at 88–89, 91 (Dep. of Douglas Dinse, taken Mar. 8, 2012) (emphases added).

Mr. Dinse's deposition testimony demonstrates that he requested a laptop

15

*only* so that he could work from home while recovering from surgery. Such an accommodation was not intended in any way to be connected to his alleged disability or, more specifically, sought as a means to overcome the day-to-day difficulties that this disability created. In other words, Mr. Dinse sought the laptop as a way to return to work more quickly, not as a means to assist him with the mental fatigue that his disability allegedly caused, which made it difficult for him to focus and timely complete his assignments.

Thus, Mr. Dinse's laptop request was a far cry from a "sufficiently direct and specific" request for an accommodation that would put Carlisle on notice that Mr. Dinse "want[ed] assistance *for his . . . disability*." *C.R. England*, 644 F.3d at 1049 (citations omitted) (internal quotation marks omitted). And it certainly did not "link[]" the laptop request to Mr. Dinse's disability in the manner that is required to trigger the interactive process. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012). To the contrary, Mr. Dinse made clear that the laptop request was entirely unrelated to the difficulties his disability created. *See* Aplt. App. at 91 (agreeing that there "wouldn't have been a reason for [him] to have a laptop at home before [his] termination"). Thus, as with Carlisle's general awareness of Mr. Dinse's disability, which we addressed above, Mr. Dinse's request for a laptop did not put Carlisle "on notice" that he needed a reasonable accommodation "*for his . . . disability*." *C.R. England*, 644 F.3d at 1049 (citation omitted) (internal quotations marks omitted).

16

In sum, it was Mr. Dinse's obligation to put Carlisle on notice that his *disability* was affecting his performance and, more to the point, that he desired an accommodation "*for his . . . disability*." *Id.* (citation omitted) (internal quotation marks omitted). By doing so, Mr. Dinse would have triggered Carlisle's obligation to engage in the interactive process with the aim of providing him a reasonable accommodation that would render him qualified to perform the essential functions of his job. Yet, the record is clear that Mr. Dinse failed to provide Carlisle with legally adequate notice of his desire for an accommodation. As a consequence, Carlisle had no legal duty to attempt to provide Mr. Dinse a reasonable accommodation. And, as Mr. Dinse acknowledges, he was not qualified—without an accommodation—to perform his job. Accordingly, Mr. Dinse cannot carry his burden of establishing the second element of a prima facie ADA claim—*viz.*, that he was qualified, with or without reasonable accommodation, to perform the essential functions of his job. The district court therefore correctly concluded that Carlisle was entitled to summary judgment.[6]

---

[6] Mr. Dinse contends that the district court erred in not considering, as evidence in support of his claim, the EEOC's determination that Carlisle discriminated against him based on his disability in violation of the ADA. But "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC . . . determination does not create one." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1331 (10th Cir. 1999); *see also Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005) (holding that an EEOC "reasonable cause" determination letter did not constitute evidence precluding summary judgment when the other evidence was insufficient to create a genuine issue of material fact).

(continued...)

17

## III

For the reasons stated, we **AFFIRM** the district court's order granting summary judgment to Carlisle on Mr. Dinse's ADA claim.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[6](...continued)

Relatedly, Mr. Dinse's reliance on the OESC's determination that he was not terminated for "misconduct" fails to advance his reasonable-accommodation claim. Assuming *arguendo* that such a finding is admissible evidence, whether or not Mr. Dinse was terminated for misconduct is irrelevant to the issue of whether he adequately requested a reasonable accommodation. *Cf. Dillman v. Winchester*, 639 F. Supp. 2d 1257, 1268 (W.D. Okla. 2009) (concluding that an OESC determination was irrelevant because "[t]he issues before this Court are *not* whether Coleman was ultimately determined to be eligible for unemployment compensation or whether he engaged in misconduct as defined by the OESC").